UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOHN EDWARD DANIEL,

                 Petitioner,

v.

RANDEE REWERTS,

                 Respondent.

_____/

Case No. 1:22-cv-797

Honorable Sally J. Berens

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 6.) Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).

This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253 and Rule 4 of the Rules Governing § 2254 Cases. The Court is required to conduct this initial review prior to the service of the petition. Rule 4, Rules Governing § 2254 Cases.

Service of the petition on the respondent is of particular significance in defining a putative respondent's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any

procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding—the petitioner. Because Respondent has not yet been served, the undersigned concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1] Petitioner's consent is sufficient to permit the undersigned to conduct the Rule 4 review.

The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134,

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court will dismiss the petition for failure to raise a meritorious federal claim.

## Discussion

### I.    Factual allegations

Petitioner John Edward Daniel is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. On June 8, 2021, Petitioner pleaded *nolo contendere* in the Kent County Circuit Court to operating while intoxicated, third offense, in violation of Mich. Comp. Laws § 257.625. On July 22, 2021, the court sentenced Petitioner as a second habitual offender to a prison term of 5 years to 7 years, 6 months. Petitioner's minimum sentence was an upward departure from the minimum sentence range that would apply if the Michigan sentencing guidelines were followed. Petitioner's sentence was made concurrent with another sentence for operating while impaired that had been imposed about one year earlier following his guilty plea in the Kalamazoo County Circuit Court.

Dissatisfied with his sentence, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. In the court of appeals, Petitioner raised a claim that the trial court's upward departure minimum sentence was unreasonable and disproportionate. (ECF No. 1, PageID.1; Pet'r's Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 2-1, PageID.29.) That claim appeared to encompass two distinct arguments: first, the imposed minimum sentence was more than double the guideline range based on the trial court's improper and speculative surmise that Petitioner would eventually kill himself or someone else; and second, the trial court based the departure on the number of times Petitioner had been convicted of drunk driving which was already

3

taken into account in the guidelines. (Pet'r's Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 2-1, PageID.32.) Petitioner does not identify any other issues he raised in the court of appeals.

By order entered February 24, 2022, the court of appeals denied leave to appeal "for lack of merit in the grounds presented." (Mich. Ct. App. Order, ECF No. 2-1, PageID.28.)

Petitioner then sought leave to appeal in the Michigan Supreme Court. Petitioner reports that he again raised the issue regarding the trial court's unreasonable and disproportionate upward departure, but he also added a new issue: "[t]rial judge abused his discretion by sentencing Defendant under the assumption Defendant was operating a motor vehicle under the influence of alcohol." (Pet., ECF No. 1, PageID.2; Pet'r's Mich. Appl. for Leave to Appeal, ECF No. 2-1, PageID.36, 40, 41.) The crux of that argument appears to be that officers saw video that showed Petitioner driving the vehicle in a parking lot, but Petitioner was not intoxicated at that time; instead, he only became intoxicated after he parked the vehicle and then he never drove. (Pet'r's Mich. Appl. for Leave to Appeal, ECF No. 2-1, PageID.42.)

On June 29, 2022, the Michigan Supreme Court denied leave to appeal. (Mich. Order, ECF No. 2-1, PageID.35.) Shortly thereafter, Petitioner filed his habeas corpus petition raising one ground for relief, as follows:

> I.     Trial court's upward departure is unreasonable and disproportionate.

(Pet., ECF No. 1, PageID.2; Pet'r's Br., ECF No. 2, PageID.7.) Petitioner has plainly raised that argument at both levels of the Michigan appellate courts. It is exhausted. But, under the broad umbrella of the statement of that ground, in his habeas petition and brief, Petitioner introduces several new issues that have not been exhausted in both appellate courts. By way of example, Petitioner argues:

> II.    The court did not abide by the plea agreement. (Pet'r's Br., ECF No. 2, PageID.15.)

4

III.    Trial and appellate counsel rendered ineffective assistance for failing to challenge the court's abandonment of the plea agreement. (*Id*.)

IV.    Michigan's sentencing guidelines are mandatory and the trial court's use of "judge found" facts for sentencing is, therefore, unconstitutional. (*Id*., PageID.19–21.)

V.    Trial counsel rendered ineffective assistance when he advised Petitioner he would receive the same sentence from the Kent County Circuit Court that Petitioner received from the Kalamazoo County Circuit Court. (*Id*.)

VI.    The trial court based Petitioner's sentence on material misinformation of constitutional magnitude. (*Id*., PageID.19, 22.)

The Court will address all of the habeas grounds Petitioner has raised.

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not

5

consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is

presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III. Discussion

### A. Unreasonable and disproportionate sentence

Petitioner contends that the trial court's substantial upward departure from the range specified by the sentencing guidelines was disproportionate and unreasonable. Those terms— disproportionate and unreasonable—are derived from state court authorities regarding sentencing.

*See People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990); *People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017). However, "a federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Any claim that the trial court violated the state sentencing guidelines or state sentencing principles is purely a state law claim that is not cognizable on habeas review.

In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9–11; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). Nearly three decades later, in *Steanhouse*, the Michigan Supreme Court held that a sentencing court's departure from the sentencing guidelines is unreasonable if the court abused its discretion. *Steanhouse*, 902 N.W.2d at 335. The proper test for determining whether the sentencing court abused its discretion, it held, is found in *Milbourn*'s proportionality analysis. *Id*. at 335–37. In other words, a sentence departing from the guidelines is unreasonable if it is disproportionate.

It is plain that *Milbourn*, and thus *Steanhouse*, were decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21,

1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines and violated the principles of proportionality set forth in [*Milbourn*,] essentially asking the court to rule on a matter of state law which rarely serves as a basis for habeas corpus relief."); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is disproportionate under state law is also not cognizable on habeas review."); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus."). Because this Court has no power to intervene based on a perceived error of state law, *see Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41, Petitioner's claims based on *Milbourn* and *Steanhouse* are not cognizable in a habeas corpus action.

The same reasonableness/proportionality principles are not present in the United States Constitution's Eighth Amendment. That is so even though the *Milbourn* opinion quotes *Weems v. United States*, 217 U.S. 349, 367 (1910): "It is a 'precept of justice that punishment for the crime should be graduated and proportioned to the offense.'" *Milbourn*, 461 N.W.2d at 9. But the quote from *Weems* is somewhat misleading. *Weems* was not an Eighth Amendment case.

At issue in *Weems* was not a sentence imposed by a state, or even the United States, but one imposed by the supreme court of the Philippines. Mr. Weems's crime was making two false entries in a "wages paid" logbook relating to lighthouse services. His punishment for that crime was significant:

> The minimum term of imprisonment is twelve years, and that, therefore, must be imposed for "perverting the truth" in a single item of a public record, though there be no one injured, though there be no fraud or purpose of it, no gain or desire of it. Twenty years is the maximum imprisonment, and that only can be imposed for the perversion of truth in every item of an officer's accounts, whatever be the time covered and whatever fraud it conceals or tends to conceal. Between these two

possible sentences, which seem to have no adaptable relation, or rather in the difference of eight years for the lowest possible offense and the highest possible, the courts below selected three years to add to the minimum of twelve years and a day for the falsification of two items of expenditure, amounting to the sums of 408 and 204 pesos. And the fine and "accessories" must be brought into view. The fine was four thousand pesetas,—an excess also over the minimum. The "accessories" we have already defined. We can now give graphic description of Weems's sentence and of the law under which it was imposed. Let us confine it to the minimum degree of the law, for it is with the law that we are most concerned. Its minimum degree is confinement in a penal institution for twelve years and one day, a chain at the ankle and wrist of the offender, hard and painful labor, no assistance from friend or relative, no marital authority or parental rights or rights of property, no participation even in the family council. These parts of his penalty endure for the term of imprisonment. From other parts there is no intermission. His prison bars and chains are removed, it is true, after twelve years, but he goes from them to a perpetual limitation of his liberty. He is forever kept under the shadow of his crime, forever kept within voice and view of the criminal magistrate, not being able to change his domicil without giving notice to the "authority immediately in charge of his surveillance," and without permission in writing. He may not seek, even in other scenes and among other people, to retrieve his fall from rectitude. Even that hope is taken from him, and he is subject to tormenting regulations that, if not so tangible as iron bars and stone walls, oppress as much by their continuity, and deprive of essential liberty. No circumstance of degradation is omitted. It may be that even the cruelty of pain is not omitted. He must bear a chain night and day. He is condemned to painful as well as hard labor. What painful labor may mean we have no exact measure. It must be something more than hard labor. It may be hard labor pressed to the point of pain.

*Weems*, 217 U.S. at 365–66.

The measure of that punishment was not the United States Constitution. In *Weems*, the United States Supreme Court was interpreting the "cruel and unusual" punishment clause of the Bill of Rights of the Philippine Islands. Moreover, the "precept of justice" referenced was not one adopted by the United States Supreme Court or by any court of the islands; it was a belief attributed to persons "who have formed their conception of the relation of a state to even its offending citizens from the practice of the American commonwealths . . . ." *Id.* at 367.

The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence

offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (discussing that the gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 30 (2003) (finding that the principle applies only in "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality" (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991))). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).

Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. His sentence does not present the extraordinary case that warrants deeper inquiry into reasonableness and proportionality or that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment. Petitioner is not entitled to habeas relief based on his claim that his sentence is disproportionate or unreasonable.

### B.    Petitioner's unexhausted claims

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275–77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). A petitioner has fairly presented his claims when he identifies the constitutional right that he claims has been violated and the particular facts which supported his claims to the state courts. *Onifer v. Tyszkiewicz*, 255 F.3d 313, 315 (6th Cir. 2001). The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39.

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Petitioner's appellate briefs indicate that he took issue with his minimum sentence and complained that it was disproportionate and unreasonable. But Petitioner's additional claims were never raised in the Michigan Court of Appeals and were never fairly presented to either Michigan appellate court.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Petitioner has at least one available procedure by which to raise the issues he has failed to present to both Michigan appellate courts. He may file a motion for relief from judgment under Mich. Ct. R. 6.500 *et seq.* Under Michigan law, one such motion may be filed after August 1, 1995. Mich. Ct. R. 6.502(G)(1). Petitioner has not yet filed his one allotted motion.

Although Petitioner's failure to exhaust his additional claims in the state courts prevents this Court from granting habeas relief, it does not foreclose denying such relief on the merits. "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of

the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); *see also Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that a district court should deny a stay where unexhausted claims are meritless because, under 28 U.S.C. § 2254(b)(2) such claims may be properly denied); *Smith v. Nagy*, 962 F.3d 192, 204 (6th Cir. 2020) (court rejected unexhausted claim on the merits citing 28 U.S.C. § 2254(b)(2)); *Harris v. Lafler*, 553 F.3d 1028, 1031–32 (6th Cir. 2009) (explaining that a district court may "ignore the exhaustion requirement altogether and *deny* the petition on the merits if *none* of the petitioner's claims has any merit" (emphasis in original)). As set forth below, each additional claim is properly denied.

### 1. The plea agreement (habeas grounds II, III, and V)

Petitioner contends that he was promised that his sentence in the Kent County prosecution would be the same as his sentence in the Kalamazoo County prosecution. The Sixth Circuit has recognized that a state prosecutor's breach of a plea bargain is a violation of the federal constitution cognizable on habeas review. *Dixon v. Alexander*, 741 F.2d 121, 123 (6th Cir. 1984). The government may not openly breach a plea agreement. *See Mabry v. Johnson*, 467 U.S. 504, 509 (1984) ("[W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand[.]"). As the Supreme Court stated in *Mabry*, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id*. at 509 (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

Plea agreements are contractual in nature. In interpreting and enforcing them, courts use traditional principles of contract law. *See Smith v. Stegall*, 385 F.3d 993, 999 (6th Cir. 2004) (citing *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991)).

> One fundamental principle of contract interpretation is that "primary importance should be placed upon the words of the contract. Unless expressed in some way in the writing, the actual intent of the parties is ineffective, except when it can be made the basis for reformation of the writing." 11 Williston on Contracts § 31:4 (4th ed. 2000). Consistent with the principle articulated by Williston, this court has held that the state will be held to the literal terms of the plea agreement.

*Id.* (citing *United States v. Mandell*, 905 F.2d 970, 973 (6th Cir. 1990)). The content of a plea agreement and what the parties agreed to is a question of fact. *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002).

The facts presented by Petitioner, however, indicate that there never was an actual agreement that Petitioner would receive the same term of imprisonment that he received in Kalamazoo County when he was sentenced in Kent County. Petitioner does not indicate that the Court informed Petitioner his sentence would be the same in both cases. Petitioner does not indicate that the prosecutor told him his sentence would be the same in both cases. Rather, Petitioner states that his own counsel told Petitioner that he would receive the same sentence in both cases. (Pet'r's Br., ECF No. 2, PageID.16–17.) The only sentencing aspect of the plea agreement was that the sentences would be concurrent. (*Id.*)

Because Petitioner has not presented facts that support a claim that the prosecutor or the trial court breached a term of the plea agreement, he cannot prevail on that habeas claim.

Petitioner also contends that his counsel rendered ineffective assistance because he did not challenge the trial court's failure to enforce the plea agreement. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. Petitioner cannot establish those

elements with regard to a claim that counsel should have challenged a breach of the plea agreement because there was no breach of the plea agreement. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

Although counsel was not ineffective for failing to challenge a breach of the plea agreement, there are questions regarding his effectiveness to the extent he misinformed Petitioner regarding the consequences of his plea.

The test for determining a guilty plea's validity is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970).

To find a guilty plea constitutionally valid, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be

accepted unless made voluntarily after proper advice and with full understanding of the consequences." (internal quotations and citation omitted)).

Finally, the defendant must have available the advice of competent counsel. *Tollett v. Henderson*, 411 U.S. 258, 267–68 (1973); *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). "Where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56 (quoting *McMann*, 397 U.S. at 771).

Petitioner's contention that counsel told Petitioner he would receive the same sentence in both cases touches upon his understanding of the consequences of the plea and the effectiveness of his counsel. Regarding Petitioner's understanding of the consequences of his plea, Petitioner claims now that he was promised his sentence in Kent County would not exceed his sentence in Kalamazoo County. But that is not what he told the trial court.

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.2d at 326). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Garcia,* 991 F.2d at 326. A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431

16

U.S. 63, 73–74 (1977) (finding that a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

Under settled Sixth Circuit authority, a petitioner's responses to the trial judge, given under oath at the plea hearing, preclude a later assertion that he was unaware of the consequences of his plea or that there was a specific sentence agreement as part of his plea bargain. In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms. The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." *Baker*, 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696–97 (5th Cir. 1976)).

The court again addressed this issue in *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993), a Section 2255 case. In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would be sentenced to probation if he pled guilty. The defendant had testified at the plea colloquy, however, that no other promises had been made to him, other than those stated in the plea agreement. *Todaro*, 982 F.2d at 1026. Consequently, the Sixth Circuit was again faced with a situation in which a defendant's post-conviction allegations were directly contrary to his statements at the plea hearing. Relying on *Baker*, the court reiterated its earlier holding, under which a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy.

Petitioner submitted his plea hearing transcript with his petition. (Plea Hr'g Tr., ECF No. 2-1, PageID.44–51.) During the hearing the prosecutor and Petitioner's counsel reviewed on the record the terms of the plea agreement, including the charge to which Petitioner would be entering

his plea, the maximum penalty, and that the Kent County sentence would be concurrent. The court then put Petitioner under oath. The court directed the prosecutor to recount the terms of the plea agreement. Petitioner agreed that the described terms—with no specific sentence agreement—was the complete agreement and that no one had promised him anything else. Petitioner is bound by those statements. Accordingly, the Court rejects Petitioner's contention that his plea was induced by a promise that the Kent County sentence would be the same as the Kalamazoo County sentence.

The same result follows when considering Petitioner's claim that a misunderstanding of the consequences was caused by counsel. The two-part *Strickland* test applies. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id*. In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

But here, even if Petitioner went into his plea hearing with the misunderstanding that his plea agreement included a specific term about his sentence, the statements of the prosecutor, the trial court, and his own counsel would have disabused him of that notion. He cannot show that he "would have insisted on going to trial" if he had only known the truth, because he was confronted with the truth at the hearing and he chose to go forward anyways.

For these reasons, Petitioner cannot prevail on his claims that the plea agreement was breached, his plea was involuntary, or that his counsel rendered constitutionally ineffective assistance in connection with the plea proceedings.

### 2.    "Judge found" facts (habeas ground IV)

Petitioner next argues that his sentence is constitutionally infirm because it is based on "judge found" facts. Petitioner does not provide a lot of detail regarding this claim; instead, he simply repeats several times that the facts that led to his sentence were "judge found." Presumably, Petitioner contends that the court violated Petitioner's Sixth Amendment rights because the sentence was based on facts found by the judge rather than facts found by the jury beyond a reasonable doubt or admitted by Petitioner. That argument flows out of a line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Ring v. Arizona*, 536 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, reiterating the rule that any fact that increases the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

Thereafter, in *Alleyne*, 570 U.S. 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences. In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), the Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines scheme violates the Sixth Amendment, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables [] that

*mandatorily* increase the floor of the guidelines minimum sentence range." *Lockridge*, 870 N.W.2d at 506 (emphasis in original).[2]

The Michigan Supreme Court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines and make the guidelines advisory only. *Id.* at 520–21 (relying on *Booker*, 543 U.S. at 264–265 and holding that the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever only the mandatory component, still requiring courts to consider the guidelines, but making them advisory and subject to review for reasonableness). Petitioner was sentenced long after *Lockridge*. Although he argues the guidelines are still mandatory (Pet'r's Br., ECF No. 2, PageID.19), he is plainly wrong. Because the Michigan guidelines are advisory only, rendering Petitioner's sentence discretionary, the use of "judge found" facts would never violate any Sixth Amendment right.

Moreover, even if the guidelines were mandatory, a departure from the guidelines would be an exercise of discretion so, again, the use of "judge found" facts could not violate any Sixth Amendment right. From the inception of this line of authority in *Apprendi* to its most recent refinement in *Alleyne*, the United States Supreme Court has never suggested that judicial fact-finding in support of the court's exercise of discretion, as happened here, violates the Sixth Amendment. *See Booker*, 543 U.S. at 232 ("We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); *see also Apprendi*, 530 U.S. at 481–82 (reiterating that "a sentence imposed by a federal district judge, if within

---

[2] On August 24, 2018, the Sixth Circuit agreed with the *Lockridge* analysis. *Robinson v. Woods*, 901 F.3d 710 (6th Cir. 2018). The *Robinson* court held that the Supreme Court's decision in *Alleyne* clearly established that Michigan's mandatory minimum sentencing scheme was unconstitutional. *Robinson*, 901 F.3d at 714. The court reasoned that, "[a]t bottom, Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Id.* at 716 (citing *Alleyne*, 570 U.S. at 111–12).

statutory limits, is generally not subject to review" (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972))); *see also Reign v. Gidley*, 929 F.3d 777, 781 (6th Cir. 2019) ("But the constitutional error here was the mandatory application of the guidelines, not merely the consideration of judge-found facts."); *see also Lockridge*, 870 N.W.2d at 522 n. 31 ("In cases such as this one that involve a minimum sentence that is an upward departure, a defendant necessarily cannot show plain error because the sentencing court has already clearly exercised its discretion to impose a *harsher* sentence than allowed by the guidelines and expressed its reasons for doing so on the record. It defies logic that the court in those circumstances would impose a lesser sentence had it been aware that the guidelines were merely advisory. Thus, we conclude that as a matter of law, a defendant receiving a sentence that is an upward departure cannot show prejudice and therefore cannot establish plain error." (emphasis in original)); *United States v. Smith*, 749 F.3d 465, 487 (6th Cir. 2014) ("But both *Apprendi* and *Alleyne* took care not to disturb the district court's discretionary fact-finding in other circumstances. "Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury." (internal citation omitted)); *see also Apprendi*, 530 U.S. at 481, 120 S. Ct. 2348 ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute.").

Petitioner's "judge found" facts claim is without merit.

### 3.   Sentence based on inaccurate facts (habeas ground VI)

Claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings, *see Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (discussing that federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (holding that the alleged violation of state law

with respect to sentencing is not subject to federal habeas relief), a sentence may violate due process if it is based upon material "misinformation of constitutional magnitude"); *Roberts v. United States*, 445 U.S. 552, 556 (1980); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447.

Petitioner attempts to squeeze his challenge into the confines of the "due process" exception by claiming that the trial court based the sentence on inaccurate information when: (1) the court prophesied that Petitioner was going to kill someone; and (2) the court inaccurately believed that the guidelines variables did not already consider Petitioner's prior offenses. (Pet'r's Br., ECF No. 2, PageID.22.)

Petitioner's complaint regarding the trial court's prediction of what might happen if the court did not impose a significant sentence is not really about "materially false" information. Indeed, the Supreme Court has explained: "Consideration of a defendant's past conduct as indicative of his probable future behavior is an inevitable and not undesirable element of criminal sentencing: 'any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose.'" *Skipper v. South Carolina*, 476 U.S. 1, 5 (1986) (quoting *Jurek v. Texas*, 428 U.S. 262, 275 (1976) (joint opinion of Stewart, Powell, and Stevens JJ.)). Therefore, the court's "prophesy" is not a due process violation.

Petitioner's complaint regarding the court's belief about the guidelines variables is also not about facts. Rather, it is a complaint that the trial court failed to follow state sentencing law when the court twice considered Petitioner's criminal history—once as part of Petitioner's prior record

variable score and then again as the foundation for predicting Petitioner's future behavior absent a significant sentence. As explained above, claims regarding application of the state sentencing guidelines are not cognizable on habeas review. Petitioner's due process claim relating to his sentence is without merit.

## IV.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that jurists of reason could . . . conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, for the same reasons the Court concludes that Petitioner has failed to

demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court also concludes that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **<u>Conclusion</u>**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:   September 26, 2022                          /s/ Sally J. Berens
                                                                    SALLY J. BERENS
                                                                    U.S. Magistrate Judge